IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Anthony Younger, | : | Case No. 1:12-cv-933 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING IN PART AND |
| | : | DENYING IN PART DEFENDANT'S |
| Ingersoll-Rand Company, | : | MOTION FOR SUMMARY |
| | : | JUDGMENT AND GRANTING |
| Defendant. | : | DEFENDANT'S MOTION TO STRIKE |

In this case Plaintiff Anthony Younger brings claims of retaliation under state and federal law against his current employer Ingersoll-Rand Company (hereinafter "Steelcraft"). Younger alleges that Steelcraft retaliated against him by reprimanding him for missing work to attend depositions taken in a previously-filed employment discrimination and retaliation lawsuit Younger brought against Steelcraft.[1] For the purposes of this Order, the Court hereinafter will refer to the underlying lawsuit as "*Younger I*" and to the present lawsuit as "*Younger II*".

Before the Court is Defendant Steelcraft's Motion for Summary Judgment (Doc. 5) and Motion to Strike Paragraph 10 of Plaintiff Anthony T. Younger's Sworn Affidavit and Related Arguments Contained in Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 9).

Because Plaintiff failed to respond to Defendant's Motion to Strike within the time permitted and because the Court finds that Motion to be well-founded, the Court **GRANTS** Defendant's Motion to Strike. For reasons elaborated upon below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment.

---

[1] The earlier-filed lawsuit also is before this Court and may be found at CM/ECF # 1:10-cv-849.

## I.    BACKGROUND[2]

Plaintiff Younger has worked at the Steelcraft plant in Blue Ash, Ohio for more than twelve years.  The plant manufactures steel doors and frames.  The hourly manufacturing employees, including Younger, are members of the United Steelworkers of America, AFL-CIO, Local 7697 (the "Union").

### A.    Steelcraft's Attendance Policies and Complaint Procedures

The Union and Steelcraft have negotiated and agreed upon a collective bargaining agreement (the "CBA").  At all times relevant to this lawsuit, the CBA incorporated a no-fault attendance policy that was applicable to all Union employees (the "Absence Control Policy"). The Absence Control Policy negotiated by Plaintiff's Union is "designed to ensure reasonable and equitable treatment based on objective standards."  (Parson Decl. Ex. A at 49, Doc. 5-3 at Page ID # 163.)  The Policy categorizes absences into two broad groups: excused absences[3] and unexcused absences.  (*Id*. Ex. A at 50, Doc. 5-3 at Page ID # 164.)

Union employees are assessed one point for each unexcused absence,[4] with certain exceptions listed under the section titled, "Administration," describing types of absences falling outside the "excused" category for which no points are assigned.  (*Id*. Ex. A at 50–51, Doc. 5-3

---

[2] Unless otherwise indicated by a citation to the record, the information in this section comes from Defendant's Statement of Proposed Undisputed Facts (Doc. 5-2) and Plaintiff's Response to Defendant's Proposed Undisputed Facts (Doc. 9).  The Court accepts as true any proposed undisputed fact admitted by Plaintiff except where unsupported by the evidentiary record.

[3] Excused absences are defined to include approved paid absences (*e.g.*, vacations, holidays, bereavement, and jury service, and absences due to the employee being subpoenaed to court as a witness in a case in which the employee is *not* a party), absences due to industrial injury, and approved unpaid absences (*e.g.*, personal leave as permitted under the CBA, approved FMLA leave, and leave related to Union Business).  (*Id*. Ex. A at 20, 50, Page ID # 149, 164.)

[4] An additional half-point may be assessed if the employee fails to report the unexcused absence within the time period set forth in the Policy.  (*Id*. Ex. A at 50, Page ID # 164.)

at Page ID # 164.)   Consistent with the CBA, the Absence Control Policy contains a progressive disciplinary process.  Employees are given a "Written Verbal Warning" at six points, a written reprimand at nine points, a zero day suspension at twelve points, and are subject to discharge at fifteen points.  (*Id*. Ex. A at 53, Doc. 5-3 at Page ID # 165.)  In addition to accumulating points, employees can reduce or "reverse" their points through good attendance. (*Id*.)  Specifically, the policy provides that when an employee has "100% attendance for any given calendar month," one point will be removed from his or her record.  (*Id*.)  Employees also can earn a personal day by attaining perfect attendance for three consecutive calendar months. (*Id*.)

Absences related to legal proceedings are specifically referenced at least twice in the Policy.  First, excused absences explicitly include those related to jury service and to the employee being subpoenaed to court as a witness in a case in which the employee is *not* a party. (*Id*. Ex. A at 20, 50, Doc. 5-3 at Page ID # 149, 164.)  Second, as described under the "Administration" section, the Policy permits up to three absences per year related to divorce court appearances and non-criminal mandatory court appearances, provided that the employee give notification of the planned absence at least forty-eight hours in advance and that the employee submit proper documentation (hereinafter "Court-Related Absence Exception").  (*Id*. Ex. A at 50–51, Doc. 5-3 at Page ID # 164.)  Absences falling under that exception are not subject to points charged under the Policy and "will not be counted toward gaining a personal day."  (*Id*. Ex. A. at 50, Doc. 5-3 at Page ID # 164.)

There are at least three internal complaint mechanisms available to Union employees who wish to report violations of Steelcraft's policies: they are entitled to file grievances under the CBA, which grievances may be subject to arbitration if not resolved in the employee's favor; they can bring complaints directly to Steelcraft's Human Resources Department; or they can utilize an anonymous hotline.

### B.    October 2011 Absences

In *Younger I*, filed on December 1, 2010, Younger and a co-worker, Lee Gillett, alleged *inter alia* that during a specific period of their employment at Steelcraft, they had been subjected to a hostile work environment and disparate treatment on the basis of their race and religion, respectively.  On September 26, 2011, Steelcraft served notices of deposition for Younger and Gillett in connection with their lawsuit.  The depositions were scheduled, by agreement of counsel, for Tuesday, October 25 (Younger) and Wednesday, October 26, 2011 (Gillett).  (*See* Younger Aff. ¶ 7, Doc. 6-1 at Page ID #362.)  The notice of Younger's deposition states as follows:

> Please take notice that pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, Defendant Ingersoll-Rand Company, by its undersigned counsel, will take the deposition of Plaintiff, Anthony Younger on the 25th day of October, 2011, beginning at 9:00 a.m., at the offices of Vorys, Sater, Seymour and Pease LLP, 52 East Gay Street, Columbus, Ohio 43215.  The oral examination will take place before a notary public or other officer of the court authorized to administer oaths, and will be recorded by sound and/or stenographic means.  The deposition will continue from day-to-day until completed.

(*Id*. Ex. 1, Doc. 6-1 at Page ID # 365.)

Plaintiff's counsel did not advise Younger of the deposition dates until October 23, 2011. Younger claims that he asked his attorney about his absences and "Mr. Velez then said the company should not charge me anything because that was their request, and if they do notify him

4

and he would take care of it." (Parson Decl. Ex. B, Doc. 5-3 at Page ID # 220.)  At 7:15 p.m. on

Monday, October 24, 2011, Younger called the job absence line to notify Steelcraft of his

planned absence for Tuesday, October 25, 2011.  Younger left a message that included his name,

clock number, the name of his team leader, and the reason for his absence.  (*Id*.)  Younger called

again at 9:15 p.m. on Tuesday, October 25, 2011 to report his Wednesday, October 26, 2011

absence.[5]  In a statement provided to the U.S. Equal Employment Opportunity Commission

("EEOC"), Younger indicated that he explained that he would be in Columbus, Ohio giving a

deposition at the company's request.  (*Id*.)

When Younger returned to work on October 27, 2011, his immediate supervisor, Russell

Myers, notified him that two points had been assessed to his record due to Younger's two-day

absence.  (*Id*.)  Younger disputed those points and refused to sign the attendance slips.  (*Id*.)

Despite the dispute, Myers submitted the attendance slips to the Human Resources Coordinator,

Mike Becker, who is in charge of enforcing the Absence Control Policy.  (*See id*.)  Younger

claims that he approached Becker about the absences on October 27, 2011, and Becker said that

"he did not know and it was not up to him."  (*Id*.)

On the following day, October 28, 2011, Myers once again asked Younger to sign the

attendance slips.  (*Id*. Ex. B, Doc. 5-3 at Page ID # 221.)  Myers told Younger that the points

were assessed because Younger had not complied with the forty-eight hour notice requirement.

(*Id*.)  Younger then reported the dispute to his Union representative.  (*Id*.)  According to

Younger, the Union representative met with Steelcraft Labor Relations Manager Carl Parson

about the matter, and he later reported to Younger that Parson would agree to subtract the point

---

[5] It is unclear from the evidence whether the October 26, 2011 absence was related to a

assessed for the date of Younger's deposition, but not for the date on which Younger attended Gillett's deposition.  (*Id*. ¶ 1, Ex. B, Doc. 5-3 at Page ID # 133, 222.)

At the time Younger accumulated the two disputed attendance points, he already had eleven and one-half points.  (Younger Aff. ¶ 8, Doc. 6-1 at Page ID # 362.)  Because the two additional points brought him above the twelve-point threshold that triggers the third step in the progressive disciplinary process, Younger received a disciplinary notice imposing a zero-day suspension on October 28, 2011.  (*Id*. Ex. 2, Doc. 6-1 at Page ID # 368.)

In April 2012, following unsuccessful settlement negotiations in *Younger I*, Steelcraft removed both points from Younger's records in a showing of good faith.  Despite the removal of the points, in May 2012, Younger filed a Charge of Discrimination with the EEOC, alleging retaliation in connection with the attendance points assessed to his record for the October 25 and 26, 2011 absences.  (Parson Decl. Ex. B, Doc. 5-3 at Page ID # 213.)  The EEOC issued a right to sue letter with respect to that charge on September 6, 2012.  (*Id*., Doc. 5-3 at Page ID # 176.)

### C. Subsequent Absences Related to Depositions in *Younger I*

Following the depositions of Younger and Gillett, there were many other depositions taken in *Younger I*.  As to the many Union employees who were deposed by the parties, the Absence Control Policy specifically provides for excused, and paid, time off for any employee "[s]ubpoenaed to court as a witness per Article 8."  (Parson Decl. ¶ 11, Doc. 5-3 at Page ID # 134.)  According to Parson, that provision would not excuse Younger's absence for the purpose of attending such depositions because Younger was not subpoenaed to those depositions as a witness.  (*See id*.)

---

continuation of Younger's deposition or only to his attendance of Gillett's deposition.

Instead of relying on that provision, in 2012, Younger used vacation leave to attend a number of depositions. (*Id*. ¶ 9, Doc. 5-3 at Page ID # 134.) No grievances were filed regarding the use of that leave. (*Id*.) After Younger exhausted his vacation, he requested that he be granted unpaid leave under Article 16, Section 1 of the CBA to attend additional depositions. That section provides that "[f]or good cause shown in writing, the Company may grant a leave of absence without pay for a period not to exceed thirty (30) days." (*Id*. ¶ 10, Doc. 5-3 at Page ID # 134.) Steelcraft considered but ultimately denied Younger's request. In his declaration, Parson states that Article 16, Section 1 of the CBA has only been applied to requests for unpaid leaves of absences for medical-related reasons in situations where employees have otherwise exhausted legally or contractually provided medical leave. (*Id*. ¶ 12, Doc. 5-3 at Page ID # 135.) Younger and the Union were advised of Steelcraft's position with respect to Younger's request for unpaid leave. In his Complaint, Younger states that subsequently, on July 26, 2012, he missed work to attend Parson's deposition and was given a written reprimand for his absence, but Younger provides no evidence to support that allegation. Although a grievance was filed by the Union, Younger never filed an EEOC charge relating to that issue.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom,

must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).  The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52 (1986). But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Id.* at 247–48.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

The Court carefully reviews "those portions of the submitted evidence designated by" both parties.  *Guarino v. Brookfield Twp. Tr's.*, 980 F.2d 399, 410 (6th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . .").  Although the Court

"may consider other materials in the record," Fed. R. Civ. P. 56(c)(3), the Court will not "sua sponte comb the record from the partisan perspective of an advocate for the non-moving [or moving] party." *Guarino*, 980 F.2d at 410.

## III.  ANALYSIS

In his Complaint, Younger raises retaliation claims under Title VII and Ohio Revised Code §§ 4112.02, 4112.99.  Specifically, Younger alleges that Steelcraft retaliated against him due to his activities in the *Younger I* lawsuit by reprimanding him for missing work to attend depositions in October 2011 and July 2012.  Steelcraft moves for summary judgment on the following bases: (1) Younger's claims are barred by the principle of *res judicata* given his failure to assert them in *Younger I*; (2) any Title VII claim (as opposed to a claim under Ohio law) relating to actions taken during July 2012 is barred by Younger's failure to exhaust administrative remedies; and (3) Younger's retaliation claims fail as a matter of law because he cannot establish a prima facie case of retaliation or prove pretext.

In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Younger concedes the second argument.  (*See* Doc. 6 at 15, Page ID # 358.)  Additionally, in addressing the merits of his retaliation claims, the only adverse actions Younger describes are those related to his 2011 absences.[6]  Accordingly, the Court considers any claim related to the actions Defendant is alleged to have taken in July of 2012 to have been abandoned by Younger.

---

[6] In his Memorandum in Opposition, Younger focuses only on the July 2011 absences in his discussion of the elements of his retaliation claim and of the issue of pretext.  The only argument Younger makes as to the events occurring in July 2012 appears in a short, unnumbered section at the conclusion of his memorandum.  Though he contends Steelcraft's denial of his request for unpaid leave could be viewed as retaliation, he makes no attempt to demonstrate how that conduct satisfies the elements of a prima facie case of retaliation.  Rather, his main argument appears to be that Steelcraft acted unreasonably in denying his request.  Even if the Court were to consider a retaliation claim in connection with the July 2012 conduct, such a claim would fail as Younger fails to clearly identify any particular adverse action and points to no evidence suggesting that Steelcraft's denial of his request for unpaid leave was pretext for discrimination.

The Court therefore addresses only Defendant's first and third arguments with respect to Younger's October 2011 absences and related discipline.

### A.    *Res Judicata*

The doctrine of *res judicata*, or claim preclusion, is applicable when the following four elements are met:

1.    A final decision on the merits in the first action by a court of competent jurisdiction;
2.    The second action involves the same parties, or their privies, as the first;
3.    The second action raises an issue actually litigated or which should have been litigated in the first action; [and]
4.    An identity of the causes of action.[7]

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).

In its Motion for Summary Judgment, Defendant refers to the elements described above, but provides no explanation as to how those elements are met with respect to Younger's current claims.  Given that Younger's current retaliatory discrimination claims pertain to concrete instances of alleged retaliation occurring well after the filing of *Younger I* and are only tangentially related to the claims asserted in *Younger I*, the Court finds that the claims asserted in this suit are not barred by *res judicata*.  Defendant's contention that Plaintiff raised the allegations asserted in this lawsuit in *Younger I* is not entirely accurate.  On August 14, 2012, the Court held a telephonic status conference in *Younger I*, during which Plaintiff's counsel requested leave to amend the complaint to add new claims such as those raised in the instant suit. The Court advised counsel that if he wished to seek leave to amend the complaint, he first would need to file a motion and a proposed amended complaint for the Court to consider.  For whatever

---

[7] Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981).

reason, Plaintiff's counsel opted to file *Younger II* rather than attempt to amend the *Younger I* complaint to assert the new retaliation claims. The Court cannot fault Plaintiff's counsel's decision given that the dispositive motion deadline was fast approaching and the addition of new claims likely would have caused a delay in the schedule. In any case, the retaliation claims raised in *Younger I* are sufficiently distinct from those raised in the instant case such that resolution of the former claims has no perceptible effect on the latter claims. In sum, there is no identity of the causes of action in *Younger I* and *Younger II*, and the Court does not find that the claims raised in this suit necessarily could have or should have been raised in *Younger I*.[8]

## B. Merits of Younger's Retaliation Claims

Younger's Ohio law and Title VII retaliation claims are analyzed under the same general framework. *Lamer v. Metaldyne Co. LLC*, 240 F. App'x 22, 28 (6th Cir. 2007). As there is no direct evidence that Steelcraft took retaliatory action against Younger with respect to his absences, Younger relies on circumstantial evidence to prove his claims. In such cases, courts employ a burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), to analyze a plaintiff's claim. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002) ("In the absence of direct evidence, retaliation claims are governed by the *McDonnell Douglas* burden-shifting framework.").

Under that framework, the plaintiff first "has the burden of proving by a preponderance of the evidence a prima facie case." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–

---

[8] Though unclear, Plaintiff's Memorandum in Opposition could be read as promoting a retaliatory harassment theory of his retaliation claims. Such a claim cannot be found in Plaintiff's Complaint, which the Court reads more narrowly as asserting retaliatory discrimination specifically with respect to the imposition of discipline under the Absence Control Policy in 2011 and 2012. (*See* Doc. 1.) To the extent Plaintiff now argues for a broader reading of his Complaint which would include a claim of retaliatory harassment based in part on the broad allegations of harassment alleged in *Younger I*, the Court finds that such a claim would be so closely related to *Younger I* that

53 (1981). "The burden of establishing a prima facie case in a retaliation action is not onerous, but

one easily met." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (internal quotation marks omitted). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity under Title VII; (2) the exercise of his protected rights was known by the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

If the plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged adverse action. *McDonnell Douglas Corp.*, 411 U.S. at 802–03. If defendant meets this burden, the plaintiff must then show that the defendant's articulated reason is a pretext for discrimination. *Id.*

### 1. Prima Facie Case

Steelcraft does not dispute that Younger engaged in protected activity, specifically with respect to his pursuit of Title VII claims in *Younger I*, or that Steelcraft had knowledge of that activity. However, Steelcraft does contest Younger's ability to prove that it took an adverse employment action against Younger or that any such action is causally connected to the protected activity.

### a. Adverse Action

---

Plaintiff's failure to bring the hostile retaliation claim in that case likely would render it barred by *res judicata*.

In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Younger argues that Steelcraft "took adverse employment action against [him] by (1) giving him attendance disciplinary [] points for missing work to attend his deposition; and, (2) a zero day suspension." (Doc. 6 at 7, Page ID # 350.) Steelcraft contends that that conduct does not reach the level of a materially adverse employment action.

In 2006, in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–61, 67–70 (2006), the Supreme Court resolved a circuit split regarding the nature of adverse employment action required to demonstrate retaliation under Title VII. The Supreme Court rejected the approach previously taken by the Sixth Circuit, which had defined "adverse employment action" for purposes of both retaliation and substantive discrimination claims to mean a "materially adverse change in the terms and conditions" of employment, concluding that Title VII's substantive discrimination provision and its antiretaliation provision "are not coterminous" and that the conduct prohibited by the antiretaliation provision is not limited to acts which "affect[] the employee's compensation, terms, conditions, or privileges of employment."[9] *Id.* at 60–61, 67 (emphasis added).

Elaborating on the scope of the antirelatiation provision, the Court noted first that it does not protect an employee from "all retaliation," but rather only from "retaliation that produces an injury or harm." *Id.* at 67. As to "the level of seriousness to which this harm must rise before it becomes actionable retaliation," the Court held that "a plaintiff must show that a reasonable

---

[9] Title VII's antidiscrimination provision prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment," or from "limit[ing], segregate[ing], or classify[ing] his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A separate section of Title VII—its antiretaliation provision—prohibits an employer from "discriminat[ing] against" an employee or job applicant

employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id*. at 57, 67–68 (internal quotation marks omitted) (adopting the formulation set forth by the Seventh and District of Columbia Circuits).

In an in-depth discussion of the manner in which lower courts must apply that standard, the Supreme Court emphasized that it was objective in nature, hence the reference to "a reasonable employee."  *Id*. at 68–69.  The Court additionally distinguished "*material* adversity" from "trivial harms," noting that Title VII "does not set forth a general civility code for the American workplace," and that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  *Id*. at 68 (internal quotation marks omitted). Finally, the Court noted that whether any particular conduct is sufficiently severe to rise to the level of actionable retaliation will depend on the particular facts of each case:

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters.  The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.  A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.  A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight.  But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.  Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an act that would be immaterial in some situations is material in others.

*Id*. at 69 (internal quotation marks and citations omitted).

---

because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or

With that guidance in mind, the Court finds that there are at the very least questions of fact as to whether, in the context of this case, the assessment of attendance points against Younger for his 2011 absences and resultant zero-day suspension constitute materially adverse employment actions. Defendant relies upon a number of cases in which courts have found that the assessment of attendance points under the particular facts of the case did not constitute a materially adverse action, and Defendant invites this Court to read those cases as establishing that attendance points cannot *as a matter of law* constitute an adverse action for the purpose of a Title VII retaliation claims. *See Coleman v. ARC Automotive, Inc.*, No. 3:06-cv-168, 2007 WL 325765, at *3, 5 (E.D. Tenn. Jan 31, 2007) *affirmed*, 255 F. App'x 948 (6th Cir. 2007) (decision not to excuse an employee's absence as FMLA leave due to employee's failure to submit proper documentation was not a materially adverse action); *Adams v. ExpressJet Airlines, Inc.*, Case No. 3:05-CV-128-S, 2006 WL 3791308, at *7 (W.D. Ky. Dec. 31, 2006) (assessment of attendance points found not to constitute a materially adverse action), *motion to amend or alter the court's ruling granting summary judgment denied*, No. 3:05-CV-128-S, 2007 WL 1406958 (W.D. Ky. May 7, 2007); *Morton v. D-Z Invs., LLC*, No. 1:03cv00260, 2004 WL 1662283, at *14 (S.D. Ind. July 22, 2004) (assessment of one attendance point not an adverse action where the plaintiff was paid for a sick day despite the assessment of the point); *Cole v. Chicago Tribune Co.,* No. 96 C 3320, 2000 WL 656644, *11 (N.D. Ill. Mar. 20, 2000) (written warning for attendance problems do not constitute adverse actions). However, to read those cases in such a broad manner, the Court would have to ignore the clear instruction of the *Burlington* Court that courts must evaluate the severity of an employer's acts in the particular context of the case at hand.

---

participated in" a Title VII proceeding, investigation, or hearing. § 2000e–3(a).

In the instant case, when the facts are viewed in a light most favorable to Younger, the circumstances surrounding the alleged adverse actions include the following:

- First, and perhaps most important, the attendance points at issue were assessed to discipline Younger for missing work to attend a deposition scheduled and noticed *by the Defendant*.  Defendant's scheduling of Younger's deposition for a date and time when Younger also was scheduled to be at work at the very least placed Younger in a Catch 22 in which he risked discipline from the Court in the form of sanctions if he chose to skip the deposition to attend work or risked discipline in relation to his employment for missing work to attend the deposition.

- Second, Younger had already accumulated eleven and one-half points and the addition of two points left him only one and one-half points away from termination.  Under the circumstances, termination loomed as a real threat, one that Younger likely was acutely aware of given that the accumulation of fifteen attendance points was the reason for his *Younger I* co-plaintiff's termination.

- Third, although the points ultimately were removed from Younger's record, the removal did not occur until at least five months after they were first assessed and there are questions of fact as to whether the removal of those points actually placed Younger in the same position he would have been in had the points never been assessed in the first place.  For example, if those were the only points assessed to Younger in October, he may actually have earned the subtraction of a point from his record in the absence of that discipline, bringing him down to ten and one-half rather than eleven and one-half points.   Additionally, there is no indication that the

16

zero-day suspension Younger received was removed from his record and the effect of such suspensions on Younger's future employment remains unclear.

While the Court agrees that ordinarily the mere assessment of attendance points may not satisfy the materially adverse action prong of a retaliation claim, under the unique circumstances of this case, the Court finds the assessment of attendance points "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotations omitted).

The cases relied upon by Defendant are either distinguishable or unpersuasive.  In *Coleman*, for example, the undisputed facts were that the plaintiff walked off of her job in the middle of her shift, declaring "FMLA leave." *Coleman*, No. 3:06-cv-168, 2007 WL 325765, at *3, 5.  The plaintiff was assessed a half-point under the defendant's attendance policy only after she failed to provide the documentation necessary to establish the basis for the FMLA leave because her psychiatrist refused to provide her with a re-certification of her "intermittent-leave FMLA" status, and there was no evidence that the assessment of that half-point led to further discipline. *Id.*  In affirming the district court's decision that the employer's action in that case was not materially adverse, the Sixth Circuit reasoned that "the loss of FMLA benefits [and the resultant assessment of the attendance half-point] occurred only after [the plaintiff's] doctor failed to sign the re-certification papers and . . . [i]t cannot reasonably be argued that these circumstances would have dissuaded a reasonable worker from asserting Title VII protections." *Coleman*, 255 F. App'x at 953.

In *Adams*, the United States District Court for the Western District of Kentucky granted summary judgment to the defendant as to the plaintiff's Title VII retaliation claim based in part

on a finding that the assessment of one and one-half attendance points, which resulted in the plaintiff employee losing the privilege to trade shifts with other employees to be a "mere inconvenience" that did not rise to the level of a materially adverse change in her employment conditions. *Adams*, Case No. 3:05-CV-128-S, 2006 WL 3791308, at *7. The standard articulated and relied upon by the court in that order, which was issued shortly after the Supreme Court's decision in *Burlington*, was based on pre-*Burlington* precedent. *See id.* (citing *Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (adopting a standard articulated in *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993), a case involving an age discrimination claim, not a Title VII retaliation claim).[10] The plaintiff subsequently moved for reconsideration based on *Burlington*. *See Adams*, 3:05-CV-128-S, 2007 WL 1406958. Though the *Adams* court denied that motion, it did so in a short order, in which it concluded that *Burlington* "did not overrule any Sixth Circuit standard," because the "[t]he Court in *Burlington* clearly states that adverse actions must be materially adverse." *Id.* at *2. With due respect to the *Adams* Court's interpretation of *Burlington*, this Court disagrees. The *Burlington* Court did refer to material adversity in describing the standard to be applied in retaliation cases, but it adopted a *different definition* of material adversity than had previously been applied in the Sixth Circuit or than had been applied by the *Adams* Court in its original analysis. *See Burlington*, 548 U.S. at 67–69; *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595–96 (6th Cir. 2007) ("[T]he Supreme Court recently held that a plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination

---

[10] Since *Burlington*, at least one other court has applied the *Crady* standard to a Title VII discrimination claim, while noting that a broader standard applies to Title VII retaliation claims. *See Pressley v. Shinseki*, 12 C 5381, 2013 WL 5311476, at *3, 9 (N.D. Ill. Sept. 20, 2013).

context. . . .This more liberal definition permits actions not materially adverse for purposes of an anti-discrimination claim to qualify as such in the retaliation context.").

As stated above, based on the standard articulated in *Burlington*, the Court finds that, at the very least, questions of fact remain as to whether Younger suffered a materially adverse employment action.

### b.   Causal Connection

In addition to challenging the existence of an adverse action, Defendant argues that Younger cannot prove a causal connection between any such action and his protected activity. At this stage, Younger's burden with regard to causality is "minimal." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir. 1997)).  He need only "put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity." *Id*.  The "evidence must be sufficient to allow an inference that the adverse action would not have been taken had the plaintiff not engaged in protected activity." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013) (internal quotation marks omitted).  "Where the adverse action comes very close in time after the exercise of protected activity, such temporal proximity is significant enough to meet the burden alone." *Id*. (internal quotation marks omitted).

Defendant argues that because of the large gap between the filing of *Younger I* and the 2011 absences, Younger must provide additional evidence to establish causality.  The Court disagrees with Defendant's narrow focus on the date upon which Younger commenced the underlying lawsuit.  *See Burlington*, 548 U.S. at 67–68 (Title VII protects an employee from retaliation not only for "making" a charge but also for "supporting a charge of discrimination.").

19

In this case, Younger engaged in ongoing protected activities through his pursuit of his discrimination and retaliation claims in *Younger I*. He was disciplined for missing work to attend a deposition *in support of* those very claims. The temporal gap between the protected activity and the adverse action is so narrow as to be almost nonexistent. Under the circumstances, Younger need not provide any additional evidence to demonstrate causality. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."); *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."); *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir.2006) ( "Temporal proximity can establish a causal connection between the protected activity and the unlawful employment action in the retaliation context.")

The Court recognizes that there are questions of fact as to which of Younger's supervisors knew of the reason for his absences and as to when they learned of the protected activity. Defendant contends that Human Resources Coordinator Becker did not know why Younger had been absent, but Defendant fails to cite directly to any specific portion of the record to support its claim. That assertion is at the very least disputed. Younger claims to have explained the reasons for his absences during his calls to the absences line on the mornings of October 24 and 25, 2011. He also claims he spoke with Becker right after he received the

attendance slips on October 27, 2011.  Further, the Court reiterates that Younger was absent from work to attend depositions scheduled by Defendant's own counsel.  Even if Younger's direct supervisors did not learn of the reason for his absences until a day or even weeks after he returned to work, the fact remains that those supervisors took no action to remove the attendance points from Younger's record until months after the events occurred.  Under the circumstances, the Court finds that the evidence presented is sufficient to satisfy Younger's minimal burden at this stage.

### 2. Defendant's Legitimate, Nondiscriminatory Explanation and Evidence of Pretext

As Younger has established a prima facie case, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for penalizing Younger for his 2011 absences. Defendant treats those absences as falling under the Court-Related Absence provision and contends that Younger was properly assigned attendance points because he failed to comply with the forty-eight hour notice period.

The burden then shifts back to Younger to set forth evidence establishing pretext, which he can do by proving one of the following: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the discipline; or (3) that the proffered reasons were insufficient to motivate the discipline.  *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir.2012).  "The three-part test need not be applied rigidly.  Rather, [p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (internal quotation marks omitted).  It is Younger's burden to produce "sufficient evidence from which the jury could

reasonably reject [Steelcraft's] explanation and infer that [Steelcraft] intentionally [retaliated] against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

Younger appears to attempt to establish pretext via the second route.  First, Younger challenges Steelcraft's assertion that it was not given timely notice of the absences given that the depositions were scheduled by Steelcraft's counsel at least a month before they were to occur. The Court agrees the Steelcraft's notice argument is somewhat puzzling.  As discussed above, there are questions of fact as to when Younger's supervisors were notified of the depositions. However, it is undisputed that Steelcraft's counsel knew of the depositions at least one month prior to their scheduled date.  As a practical matter, the Court finds it implausible that Steelcraft would assess Younger attendance points for providing notice less than forty-eight hours prior to his absences when Steelcraft's own counsel scheduled the depositions.  The Court further finds it patently unreasonable for Steelcraft to schedule Younger's deposition on a day upon which he was scheduled to work and then to penalize him for missing work to attend that deposition.

As additional evidence of pretext, Younger points to statements made by Parson during his deposition which Younger interprets as an admission that Parson did not know why Steelcraft assessed the disputed points against Younger.  The Court does not read Parson's statements in the same manner.  However, the Court finds reason to question Steelcraft's justification for the attendance points elsewhere in the record.  Specifically, in a letter submitted to the EEOC in response to Younger's charge of retaliation, Steelcraft's counsel relies not on the Court-Related Absence Provision, which appears under the "Administration" section of the Absence Control Policy, but rather on the excused absence portion of the policy, which refers to situations in which an employee has been subpoenaed to serve as a witness.  (Parson Decl. Ex. B, Page ID #

185.)  The fact that Steelcraft has now relied on at least two separate provisions of the Absence Control Policy to justify the discipline Younger received suggests that the proffered reason did not actually motivate the discipline.  Accordingly, the Court finds sufficient evidence from which a jury could deem such discipline to be pretext for retaliation.  Indeed, the signal Defendant's conduct sends is that pursuit of Title VII complaints may result in discipline that ultimately could lead to the employee's termination.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Strike (Doc. 9), and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (Doc. 5).  Plaintiff has pointed to sufficient evidence to survive summary judgment as to his retaliation claims with respect the disciplinary actions taken against him in connection with his October 2011 absences.

IT IS SO ORDERED.


S/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court

23